## WILLIAM S. BALCH *vs.* COUNTY COMMISSIONERS OF ESSEX.

The record of an adjudication of the county commissioners, on the application of the selectmen of a town, under the St. of 1866, *c.* 112, that it is necessary to take adjoining land to enlarge a burying ground, need not set forth the facts which the statute requires in order to entitle the selectmen to make the application; but it is sufficient if such facts are alleged in the application itself.

The incapacity of a landowner to sell his land is a sufficient refusal to sell it, within the meaning of the provision of the St. of 1866, *c.* 112, that, in order to entitle the selectmen of the town to apply to the county commissioners for an adjudication of the necessity of taking the land to enlarge a burying ground, he must refuse to sell it, or demand for it a price which they deem unreasonable.

The right of a town to take adjoining land to enlarge a burying ground, by proceedings under the St. of 1866, *c.* 112, is not affected by the manner in which the title to the land is limited among its owners, whether in possession or expectancy.

Whether the actual occupation, by private proprietors, for the uses of burial, of land adjoining and needed for the enlargement of a burying ground existing in and belonging to the town, can, in any case, be held to exclude the right of the town to take it for that purpose by proceedings under the St. of 1866, *c.* 112, *quaere.*

On application of the selectmen of a town, under the St. of 1866, *c.* 112, to the county commissioners, for an adjudication of the necessity of enlarging a burying ground existing in and belonging to the town, by taking two adjoining parcels of land, the first of which was conveyed, more than a hundred years before, to a parish in the town, " for the use of a burying place," and ever since used by the inhabitants of the parish for purposes of burial, and the second was and for thirty years had been held in trust and on condition to be by the original grantees and their associates " laid out and allotted or assigned for public or private use as they shall find most convenient for improving, preserving and

equal to the average expense per scholar for such school for the period the child shall have so attended."

using the same for an addition to " the first parcel, " and to be used by them, their asso-
ciates and assigns, for that purpose only forever," the commissioners laid out and de-
clared both parcels " to be a part of the public burying ground of the town, and to be
forever kept as such," " reserving to the proprietors of lots, and also to the families of the
parish, all of the rights that they now possess." *Held*, that this judgment of the com-
missioners was valid.

To an adjudication in good faith of county commissioners, under the St. of 1866, *c.* 112,
of the necessity of enlarging a burying ground by taking a parcel of adjoining land, it
is no objection that there is no purpose on the part of the town to make burials in the
parcel, but that it is to be left open as part of a passageway giving access to the burying
ground from a public street.

PETITION for a writ of *certiorari* to quash proceedings of the county commissioners of Essex, under the St. of 1866, *c.* 112, enlarging the public burying ground of Groveland upon the application of the selectmen of that town.

The substance of the statute is as follows: The first section provides that, when there is a necessity for the enlargement of any burial ground now existing in and belonging to any town, and the owner of the adjoining land needed for such enlargement refuses to sell the same, or demands a price which the selectmen deem unreasonable, they may, with the approval of the town, make application to the county commissioners. The second section obliges the commissioners to fix a time and place for a hearing, and give notice to the landowner. The third section provides that they shall hear the parties, " and, as soon as may be after the hearing, shall consider and adjudicate upon the necessity of such enlargement, and upon the quantity, bounda- ries, damages, and value of the land adjudged necessary to be taken for that purpose." The fifth section gives the town the right thereupon to take and hold the land, " as a part and parcel of the burial ground of such town," upon payment or tender of payment of the amount of damages to the landowner. And the sixth and last section secures to the landowner the right to have his damages assessed by a jury, if he feels aggrieved by the award of them by the commissioners.

The petitioner alleged that, on August 5, 1867, the selectmen of Groveland made an application to the county commissioners of Essex, which represented that there was " an urgent necessity for the enlargement of the burial ground now existing in and

belonging to said town of Groveland, and the owners of the adjoining lands needed for such enlargement refuse to sell the same;" and the applicants, with the approval of the town, therefore requested the commissioners to fix a time and place for a hearing and give due notice thereof, and "consider and adjudicate upon the necessity," &c. (quoting the language of the third section of the statute); and which specified that "the owners of the adjoining land necessary for the above enlargement," so far as known to the applicants, were, first, the "East Parish in East Bradford, now Groveland;" secondly, "those who may now be living, and the heirs of such as may be deceased, of the grantees" in certain deeds to Gardner B. Perry and others; and thirdly, the petitioner.

He further alleged that, on this application, the commissioners proceeded to make an adjudication, described in their record, which he set forth and made part of his petition, and the substance of which was as follows:

"Commonwealth of Massachusetts. Essex, ss. Court of County Commissioners. October term, A. D. 1867. On the petition of the selectmen of the town of Groveland, representing that there is an urgent necessity for the enlargement of the burial ground now existing in and belonging to the said town of Groveland. It having been made to appear that all persons and corporations interested therein had been duly notified of the time and place of meeting, we, the county commissioners for said county did, on the twenty-fifth day of September, A. D. 1867, proceed to view the land described in said petition, and hear all parties interested, and did adjudge that the public necessity required such enlargement in manner following:" [Here followed a description by metes and bounds, beginning and ending on Main Street in Groveland, of land to be taken for the enlargement.] "Including, within the above described limits, the ancient burying ground of the Parish of East Bradford, now included in the town of Groveland; also a tract of land purchased for a cemetery by Gardner B. Perry and others, and held in trust for burial purposes; reserving to the proprietors of lots, and also to the families of the East Parish in East Bradford, all

of the rights that they now possess. And we hereby lay out and declare the several parcels of land; included within the above described bounds, to be a part of the public burying ground of the town of Groveland, and to be kept forever as such. For a more particular description reference is to be had to the plan on file herewith, and which is adopted as a part of the above order." The only award of damages was " to William S. Balch the sum of fifty dollars, in full satisfaction for all claims and demands for damages for the aforesaid premises, to be paid by the town of Groveland."

Applying to the plan the description by metes and bounds, it appears that the burying ground of the town lay more than forty-two rods northwest of Main Street, and the land taken covered the intervening distance and connected it with that street, by the annexation, first, of the tract " purchased for a cemetery by Gardner B. Perry and others, and held in trust for burial purposes," which immediately adjoined on the southeast the burying ground of the town, and was more than seventeen rods wide on the line of junction; second, of the " ancient bury-ing ground of the Parish of East Bradford," which immediately adjoined on the southeast the Perry tract, and was ten rods wide on the line of junction; and third, of a narrow piece of land, only two rods wide, running from the southeastern bound-ary of the " ancient burying ground of the Parish of East Brad-ford," about ten rods, to the street. A strip of this last named piece was land taken from the petitioner; and its situation in relation to the other parcels of land above named is hereinafter more fully set forth.

The petitioner alleged that he was interested in the " ancient burying ground of the Parish of East Bradford," " owning a lot in the same in which deceased members of his family are bur-ied;" and was also interested in the Perry tract, " being one of the original proprietors to whom the same was conveyed;" and that " both are inclosures appropriated to the burial of the dead, and neither of said burying grounds are needed or wanted to enlarge the burying ground belonging to the town of Groveland, but were included in the application of the selectmen in order

that they might reach the other land included in said application, belonging solely to this petitioner, which they desired to obtain for a road and not for enlargement." And he denied the right or authority of the commissioners to enlarge the public burying ground of the town by the annexation of either of said two inclosures; because the owners of them " had never been requested by the selectmen of said town, and had never refused to sell the same, nor had they ever demanded therefor any price deemed by the selectmen of said town unreasonable, and upon these points the commissioners made no adjudication, as by their record appears;" and also because each of them, " being an inclosure used and appropriated to the burial of the dead, could not be thus taken for public uses without the consent of the owners and proprietors first obtained, unless authority to that effect had been specially granted by law;" and he denied any such special grant of authority.

He then further alleged that he was the sole owner of all the other land taken; and that his said land was not "adjoining land" to the public burying ground of the town, within the meaning of the statute, being separated from it by the " ancient burying ground" and the Perry tract. And he denied the right or authority of the commissioners to set off his said land, for that reason, and also for the reason that the record of the commissioners did not show that he had refused to sell it, or had demanded an unreasonable price for it.

The commissioners filed a general answer, justifying all their acts as in conformity with the statute, and denying all allegations to the contrary; and the case was heard by *Wells*, J., and reserved for the determination of the full court on a report of which the following is the substance :

At the hearing, it appeared that the " ancient burying ground of the Parish of East Bradford" was used for purposes of burial as early as about 1722, and in 1752 was conveyed to three persons named, as " a committee in behalf of the East Parish in Bradford," by a deed reciting " that the conveyance was made to said persons in their aforesaid capacity, and by them unto the East Parish in Bradford for the use of a burying place.

with the privilege of a convenient way to it from the country road for passing and repassing as there shall be occasion;' that this ground was used for burial purposes by the inhabitants of said parish, with a narrow passageway to the same from the public road near by, and this passageway was not fenced but there was a gate opening to it from the highway, and it led to another gate at the burying ground; that these premises were thus used until 1838, when it became necessary to have enlarged accommodations for burial purposes;" and that in 1838 the Perry tract was bought and conveyed to Gardner B. Perry and eight others, one of whom was the petitioner, by two deeds of the same date, each covering a separate part of it.

"Both deeds were dated June 23, 1838, and conveyed 'unto them, the said committee, their associates and their assigns forever;' and added: 'The condition of this sale is as follows, viz: to the above named committee in trust, to be by them and their associates laid out and allotted or assigned for public or private use as they shall find most convenient, for improving, preserving and using the same for an addition to the burying ground, and to be used by them, their associates and assigns, for that purpose only forever. The land being the same that has lately been fenced in with the burying ground by said committee, &c.' One of said deeds conveyed to Gardner B. Perry and others, in connection with other land adjoining, a portion of the narrow piece of land, represented on the plan, nearly in the middle of the same, the precise width of which does not appear either by said deed or plan, but it extended from the highway the whole length of the passageway to the burying ground, between the land of the petitioner on the east, and the land which was afterwards conveyed to the town of Groveland for a passageway on the west, and described as the same 'fenced in with the burying ground by said committee, &c.;' and this was then fenced in as a passageway.

"The town of Groveland, incorporated in 1850, is now composed of parts of the towns of Boxford and Bradford, including most if not all of the East Parish in Bradford.

" These grounds continued to be used for burial purposes until in 1852 the town of Groveland purchased land in the rear and adjoining the old burying grounds, and in 1866 purchased another parcel of land adjoining the same. After the purchase of the first land by the town of Groveland for a burying ground in 1852, namely, on May 6, 1853, the town took a conveyance of a narrow strip of land, being the westerly side of the narrow piece represented on the plan, extending from Main Street to the burying ground. This strip, thus conveyed to the town, is twelve links and a half in width and about ten rods in length, and is bounded in the deed southerly by the highway, and easterly by the then ' present passageway,' being the strip of land which was purchased and fenced in by Gardner B. Perry and others in 1838. The consideration in this deed to the town of Groveland is expressed as follows, namely : ' In consideration of one dollar paid by the Inhabitants of the Town of Groveland, and for the desire I have to improve and ornament the burying ground in this place,' &c. ; and the deed further provides as follows : ' The aforesaid premises to be used for the purpose of widening and ornamenting said passageway, and on the condition that said inhabitants build and maintain a good and sufficient fence on the land against my land forever." At the close of the covenants to defend the premises there is inserted the following proviso : ' Provided said premises are used for the aforesaid purposes.'

" The town of Groveland, desiring to have this strip of land thus used for a passageway still wider, made an arrangement with the petitioner for him to allow the fence upon the westerly line of his land to be moved back about seven or eight feet, so as to include that strip of his land in the passageway, without prejudice to his title to the fee in the same ; he having the right to use the same as a passageway to pass and repass to and from his land on the easterly side of the same. The town fenced said passageway, and the petitioner continued to pass and repass to and from his land through the same, until after the proceedings complained of in this case.

" Prior to the purchase of the last named land, in 1866, by the town of Groveland, there was on April 3, 1866, a town meeting, at which it was voted ' that the selectmen be authorized to purchase what land may be necessary for enlarging the burying ground, and also such land as may be necessary for a road to the ground,' and ' that the selectmen be authorized, provided they cannot agree with the owners of the land to be purchased for enlarging the burying ground, and road to the same, to call on the county commissioners to adjudicate the whole matter.' Under this vote, the selectmen proceeded to purchase the land which was added in 1866. They also entered into negotiations with the petitioner for the purchase of his narrow strip of land on the easterly side of the passageway, but a purchase of the same was not effected. At a town meeting on April 20, 1867, it was voted ' to rescind all votes passed April 1, in relation to enlarging the burying ground ; to enlarge the burying ground ; and that, provided the owner or owners of the adjoining land needed for such enlargement refuse to sell the same, or demand therefor a price deemed by the selectmen unreasonable, the selectmen be authorized and requested to petition the commissioners of the county of Essex to take so much as they may judge necessary to enlarge the burying ground belonging to said town.' Under this vote there was further negotiation with the petitioner. He was willing that his land should be used, as it had been, as a passageway, with a right for him to pass and repass, or that it should be laid out as a highway to the burying ground, but declined to sell the same on terms satisfactory to the selectmen, so as to extinguish his right to pass and repass over the same to and from his land, and a house which he had placed on said land in October 1866. The selectmen then proceeded to present the petition to the county commissioners, and the proceedings were had which are complained of in this case.

" On these facts, the petitioner contended that the county commissioners could not legally proceed to lay out and declare the two old burying grounds to be a part of the burying ground of the town of Groveland ; that they have not undertaken to transfer them so that they shall be ' taken and held forever,' by

said town, but have reserved to the East Parish, and the proprietors of the other cemetery, ' all the rights they now possess; that, if said burying grounds are not legally taken and transferred, then the petitioner's land is not ' adjoining' and cannot be taken; that, under the statute, the county commissioners may take land only in case of a necessity for enlargement and not for a road or passageway to a burying ground; and that it is evident, on the face of the whole proceedings, that the petitioner's land is taken merely for a road and passageway, and the plea of a necessity for enlargement is but a pretence, which is sought to be covered up by the worse than useless ceremony of taking the two old burying grounds in order to reach the land of the petitioner.

" If, upon the foregoing statement, the proceedings by which the strip of land belonging to the petitioner was taken and appropriated to the uses of the cemetery as therein set forth, were without authority of law, then a writ of *certiorari* is to issue; otherwise the petition to be dismissed, or the court to pass any other order that the justice of the case may require."

*H. Carter*, for the petitioner.

*J. C. Perkins*, for the respondents.

WELLS, J. The proceedings for laying out and taking the land in question, for the purpose of enlarging the burial ground belonging to the town of Groveland, were all regular and sufficient, in form. The case finds a refusal by this petitioner to sell his land for the purpose; and that the only other owners held by such title as gave them no power to sell. That fact, of incapacity to sell, is a sufficient refusal to answer the condition of the statute in this behalf. It appears also that the application of the selectmen to the county commissioners was made with the approbation, and in compliance with the vote, of the town. These facts are sufficiently set forth in their application. The record of the county commissioners shows notice to all parties interested; and an adjudication upon the necessity of the enlargement, and upon the quantity and boundaries of the land adjudged necessary to be taken; and also the damages occasioned to the petitioner.

The objections to these proceedings mainly turn upon the question of the right of the town to take, for the purposes of a burial ground, under the St. of 1866, *c.* 112, lands already appropriated to a like purpose by private grant. The statute is applicable to any "adjoining land needed for such enlargement." The right to take such land cannot depend upon the state of the title, however it may be limited among the owners, whether in possession or in expectancy. It can make no difference that the legal title is in one, and the equitable title in others, or in an indefinite class of *cestuis que trust.* The title or interest of the "East Parish in Bradford," and of the various persons who, as members of that parish, or by individual contract, had acquired rights in the "ancient burying ground," so far as the same is regarded as a right of property, or title in the land, is just as much subject to this power of public appropriation as is the title of the sole owner of an absolute fee. The objection then must rest, if at all, in the purposes to which the land had previously been appropriated.

All inclosures appropriated for the burial of the dead, whether for public or private use, are protected by law against desecration and improper intrusions. Whether the actual occupation of ground by private proprietors for the uses of burial might, in any case, be held to exclude the right of the town to convert the same into, or include it within the limits of, a public cemetery, and subject it to the control of the town authorities, is a question which we have no occasion to decide in the present case. The "ancient burying ground" was a public "burying place," to the extent of that parish; and the "land bought by Gardner B. Perry and others" was in trust to be "allotted or assigned for public or private use" as found most convenient. By the terms of the laying out, there were reserved "to the proprietors of lots, and also to the families of the East Parish in Bradford, all of the rights that they now possess." So far as individual rights of burial are concerned, they have not been disturbed. On the other hand, the reservation of those rights is in no manner inconsistent with the purpose contemplated by the statute conferring this power. The character and purposes of

the appropriation, under the statute, are the same with those upon which the land was previously held. The only change is in the legal title of the general proprietors; and in the supervision, so far as that supervision depended upon proprietorship. We are satisfied that there is no legal objection to the enlargement, on account of the character and previous appropriation of these adjoining lands.

This disposes also of the objection of the petitioner, that the strip, taken from his separate land, was not " adjoining land " to the burial ground of the town. The commissioners adjudicate upon the quantity and boundaries of the land adjudged necessary to be taken. This adjudication has no reference to boundary lines between proprietors of lands; and need not be in any manner affected by them. Those lines only become of importance in the adjustment of damages for land taken.

The only remaining objection arises upon the allegation of the petitioner that the strip of land, taken from his private estate, was taken for a road, and not in reality for the purposes of a burial place. We think we ought to regard it as having been made to appear that, in fact, there is no purpose, on the part of the town, to cause burials to be made upon that specific portion of the enlargement; but that it is to be left open as a part of a passageway by which the cemetery is reached from Main Street upon that side. The statute does not authorize the taking of land for the purposes of a road or passageway. But it does not preclude the appropriation and use of portions of land, taken for enlargement, to the subordinate and incidental purposes of walks, avenues and passage or drive ways. Neither the subsequent use in that mode, nor the previous purpose so to appropriate portions of the land, would invalidate a laying out which was made in good faith as a needed enlargement of an existing burial ground. The circumstance that the avenue or passageway, or a portion of it, is upon the exterior boundary of the enlargement, and is taken from land of a proprietor from whom no and is taken except that covered by the way, serves to present the question in its most formidable aspect. But the propriety and legality of the laying out cannot be affected by any acci-

dental circumstance arising from the manner in which the lines of individual titles may happen to intersect the land adjudged to be necessary for the enlargement. No part of the land is laid out as a highway, town way, or private way. The laying out affixes no character, and imposes no easement or burden, upon the strip of land in question, different from that which applies to the whole tract taken. The objection of the petitioner is, in substance, that, inasmuch as the strip taken from his land is to be used as part of an avenue, and not specifically for interments therein, the taking and laying out of that strip is shown to have been for other purposes than the enlargement of the burial ground of the town; and thus without the authority of the statute. We think this is a question upon which the decision of the commissioners, acting in good faith, must be held to be conclusive. Their authority covers the adjudication not only of the necessity, but of the extent and boundaries of the land required. We see no reason in this case to hold that they have exceeded or departed from their legitimate authority.

*Writ of certiorari refused.*