### VILLAGE OF CANANDAIGUA v. BENEDICT.

(Supreme Court, Appellate Division, Fourth Department.    December 18, 1897.)

1. EMINENT DOMAIN—WATER COMMISSIONERS.

A board of water commissioners has the power to condemn an easement in land for the purpose of erecting an electrical power line sustained by poles, in connection with the pumping station, under Laws 1875, c. 181, § 6, as amended by Laws 1885, c. 211, authorizing such a board to acquire by condemnation an interest less than a fee in land when deemed necessary to supply the village with water.

2. SAME—EASEMENT—PUBLIC HIGHWAY.

Where proceedings are instituted to condemn a public highway for a further easement for public use, the owner in fee of land cannot object.

3. JUDGMENT—RES JUDICATA.

A judgment dismissing proceedings, begun under Laws 1875, c. 181, § 6, as amended by Laws 1885, c. 211, to condemn an easement in lands for the use of a board of water commissioners, on the ground that the necessary preliminary steps were not taken, and reserving the right to commence a new action, is no bar to a subsequent proceeding.

Appeal from special term.

Proceeding by the village of Canandaigua, by its board of water commissioners, against Robert R. Benedict, as executor of the estate of Robert M. Benedict, deceased, and another.    From an interlocutory judgment condemning an easement, and from a final order confirming the report of commissioners, awarding $350 for the easement taken, Robert R. Benedict, executor, appeals.    Affirmed.

Argued before HARDIN, P. J., and FOLLETT, GREEN, and WARD, JJ.

J. H. Metcalf, for appellant.
James C. Smith, for respondent.

FOLLETT, J.    The plaintiff is an incorporated village of this state, and January 21, 1894, the authorities thereof organized a board of water commissioners, charged with the duty of supplying said village and its inhabitants with pure and wholesome water, pursuant to chapter 181 of the Laws of 1875, the acts amendatory thereof and supplementary thereto.    3 Rev. St. (9th Ed.) p. 2386.    After the board had duly organized, it adopted the following plan for the purpose of supplying water to said village:    The source of supply selected was Canandaigua Lake, from which water is taken about $3\frac{1}{2}$ miles south of the north end thereof, by means of a pumping station established on the west shore of the lake.    By means of pumps at this station, water is pumped from the lake into a reservoir, about 320 feet above the level of the lake, and much higher than the streets of the village.

From this reservoir, an iron conduit, 12 inches in diameter, laid 5 feet and 8 inches below the surface of the ground, connects the reservoir with the distributing conduits, laid in the streets of the village. At the foot of Main street, at the north end of the lake, the village established a power house for the generation of electricity, which is transmitted to motors at the pumping station by means of wires sustained by poles, such as are commonly used by electrical lighting companies, having cross-arms between 20 and 30 feet above the surface of the earth, on which insulated wires are strung. The poles are set in the ground within 10 feet of the conduit line, and about 110 feet apart. The appellant owns a farm extending from the lake shore westward, and across a highway known as the "Lake Shore Road," he owning the fee of the highway, subject to the easement of the public for highway purposes. For the purpose of laying its conduit line and establishing its electrical power line, the plaintiff deemed it necessary to acquire an easement in a strip of land 1,916.66 feet long and 20 feet wide, 10 feet wide on each side of the center line, through that portion of defendant's farm that lies within said highway. Being unable to agree with the defendant on the compensation to be made, a map showing the land required was filed; and September 19, 1896, this proceeding was instituted by the personal service of the petition and a notice of motion on the appellant for the purpose of condemning the easement. The appellant served and filed an answer to the petition, in which he denied the right of the plaintiff to acquire an easement through his land for the purpose of erecting and maintaining an electrical power line sustained by poles, and set up a judgment in a former proceeding, begun July 16, 1895, as a bar. Several other objections to the proceeding were taken by the answer, which need not be adverted to, as the only questions presented on this appeal are whether the plaintiff is authorized by the statutes to acquire an easement in the land for the purpose of erecting and maintaining an electrical power line above the surface of the earth between the station at the foot of Main street and the pumping station on the west shore of the lake, and whether the former judgment is a bar. The issue joined by the petition and answer was brought to trial before a special term of this court, which ordered a judgment in favor of the plaintiff, condemning the easement sought to be acquired, and appointing three freeholders to ascertain the compensation which the plaintiff should make to the owner of the farm for the easement so condemned. After a hearing, the commissioners awarded the sum of $350 as damages for the easement taken, which award was confirmed by an order of the special term entered January 30, 1897.

Do the statutes authorize the village to use lands or an easement in lands acquired for the purpose of establishing and maintaining on poles an electrical power line? By section 4 of chapter 181 of the Laws of 1875, as amended by chapter 211 of the Laws of 1885, and by chapter 383 of the Laws of 1895, the board of water commissioners is empowered to "adopt such plans as, in their opinion, may be most feasible for procuring such supply of water," and "to contract for, purchase and take by deed. or other instrument under seal, in the

name of said village, all lands, streams, water, water rights, or other property, real or personal, or rights therein, situate at any place within the county or counties in which said village may be situated, or any adjoining county or counties, which may be required for the purpose," and "to lay, relay and maintain pipes through lands, and to take, detain or divert water or streams of water which may be required for the purpose without taking the fee of the lands through which the pipes are laid or over which such streams of water flow." By the sixth section of chapter 181 of the Laws of 1875, as amended by chapter 211 of the Laws of 1885, it is provided:

"Sec. 6. Whenever any such board of water commissioners is unable to acquire by agreement any lands, streams, water or other property, or the right, title or interest, if any, less than a fee in land or the right to use and divert any water or streams required or deemed necessary for the purposes contemplated by the said act, it shall have the power to acquire the same in the manner and by the proceedings prescribed in the following subdivisions."

The regularity of the proceedings taken is not questioned, and it is unnecessary to refer to the procedure established by these acts and by the "Condemnation Law," which is now a part of the Code of Civil Procedure. The plan or system to be adopted for furnishing a water supply is wholly within the sound discretion of the board of water commissioners. The learned counsel for the appellant concedes that the village might construct and maintain an electrical power line under the surface of the ground, but insists it has no power under the statute to construct an electrical power line supported by poles. The right being conceded that the village is authorized to operate its pumps by electrical power transmitted from the power house at the end of the lake to the motors of the pumping station, it seems to me that the most feasible mode for transmitting power may be adopted by the board, provided no injury is caused to landowners which cannot be compensated in damages; provided, also, that the method adopted is not an unreasonable one. Except in large cities, the usual method of transmitting electrical power is by a line operated in the way the line constructed by the village is operated. The use of this power in this mode is a mere incidental right embraced within the general grant of power to adopt a plan and carry it into execution. By the sixth section of the act, power is conferred on the village to acquire, by condemnation, the fee of any land, or of any interest less than a fee in any land, "required or deemed necessary for the purposes contemplated by the said act." This language confers ample power upon the village to acquire any land or an interest in any land which may be necessary for the purpose of supplying the village with water. The necessity of acquiring an easement in a strip of land through the respondent's farm, of the width and length described, for the purpose of laying a water main connecting the reservoir near the pumping station with the pipes which distribute the water through the village, is not contested. It is not asserted that the power house or the pumping station is improperly located, nor is it asserted that electricity is, under the circumstances, an improper power to be employed to divert water from the lake to the reservoir. In order to transmit power from the power house to

the pumping station, a wire must be laid under the surface of the
ground, or suspended above it, and it seems to me too clear for dis-
cussion that the plaintiff, having the right to acquire an easement in
the land for water mains, and to establish a line for the transmission
of electrical power, may establish a subterranean line or a line above
the surface of the earth, and sustained by poles.

In case land or an easement in land is condemned by a railroad for a
right of way, it may be used for other purposes merely incidental to
the operation of the road. . Structures for the use of the road may be
erected thereon, and the view from the adjoining land obstructed.
Statutes delegating the right of eminent domain to corporations are
to be strictly construed, but not so literally as to defeat the evident
purpose of the legislature.    In Railroad Co. v. Kip, 46 N. Y. 546; In
re Union El. R. Co., 113 N. Y. 275, 21 N. E. 81; In re Staten Island
Rapid Transit Co., 103 N. Y. 251, 8 N. E. 548.    It is a general rule
that, when authority is given to construct and maintain a public im-
provement, all the necessary appurtenances are included.    Mills, Em.
Dom. § 59, and cases cited. . A telegraph line may not be absolutely
indispensable to the operation of a railroad, for railroads were for-
merly often operated without the aid of their own telegraph lines;
but such lines so much facilitate business that they are regarded as
necessary incidents to the operation of railroads, and railroad cor-
porations have the right to construct telegraph lines by suspending
wires on poles set in land over which easements have been compul-
sively acquired for their right of way, and such use does not impose
an additional burden upon the land, for which its owner may de-
mand additional compensation.    Telegraph Co. v. Rich, 19 Kan. 517;
Taggart v. Railway Co., 16 R. I. 668, 19 Atl. 326; Mills, Em. Dom.
§§ 59, 209; Rand. Em. Dom. §§ 162, 210.    In the case last cited, the
defendant was authorized to operate its line by "steam, horse, or
other power," and was prohibited from incumbering "any portion of
the streets or highways not occupied by said tracks."    The charter
contained no mention of electricity, and permission was not expressly
granted to erect poles and suspend thereon electrical wires, or to con-
demn property for such purpose.    It was held in an action brought
by an abutter that maintaining such poles ancillary to the electrical
motive power did not impose a new servitude on the street, and did
not require compensation to abutting owners.    Balch v. Commis-
sioners, 103 Mass. 106, arose over a statute conferring power upon the
commissioners compulsively to take land "as a part and parcel of the
burial ground of such town"; and it was held that they had power
to acquire a strip of land two rods wide and ten rods long for a drive-
way between the street and the burial ground, as an incident to the
power granted to take lands for burial purposes.

As between these litigants, the fact is wholly immaterial that the
easement taken is within the bounds of the public highway.    That a
further easement for public use may be imposed on land used as a
public highway, or for a street, is so well settled that it does not re-
quire the citation of authorities.    The landowner's damages for the
injury to his private rights as owner of the land, and to his peculiar

private rights as one of the public in the highway, as such, have been ascertained; and he has no concern with the rights of the public, or with the rights of the authorities of the town in the highway, as such, and the case must be determined on the same principles as though the easement were taken through the farm outside of the highway. The former proceeding, begun July 16, 1895, and terminated by a judgment entered September 3, 1896, is not a bar to this proceeding. The judgment entered was not on the merits, but dismissed the proceeding on the ground that the village had failed to take the necessary preliminary steps to authorize the institution of such proceedings, and the judgment expressly reserves the right to the village to commence a new proceeding. It should be stated that the statutes herein considered were repealed by chapter 414 of the Laws of 1897, and the law authorizing villages to construct and maintain waterworks is contained in article 8 of that chapter,—the "Village Law."

The judgment and order should be affirmed, with costs. All concur.