## In re Opening of Twenty-second Street.

1. The right to open streets, in the exercise of the Commonwealth's right of eminent domain, is not lost because of a special Act of the legislature granting to a corporation perpetual immunity against the opening of streets through its cemetery.

2. A general Act repealing such special Act is not unconstitutional.

3. A contract between the state and a corporation, like other property and franchises, must yield to the paramount right of eminent domain. When compensation is provided for its infringement, its obligation is recognized, not impaired.

January 11th 1883.   Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green, and Clark, JJ.

Certiorari to the Court of Quarter Sessions of *Philadelphia county :* Of July Term 1882, No. 36.

The record showed the following :—Upon a petition of twenty citizens of Philadelphia the Court of Quarter Sessions appointed a jury of view to report on the question of opening Twenty-second street, between Islington lane and Lamb Tavern road, in the city of Philadelphia.    Said street was already opened north and south of the points named, and had been originally, in 1839, laid out on the plans of Penn township (now in the city of Philadelphia) as a street, over the intervening land through which it was now desired to open it.

This intervening land is a cemetery, owned by the " United American Mechanics and United Daughters of America Cemetery Association," a corporation chartered in 1848, for the purpose of establishing said cemetery on said tract of land.

This corporation procured the passage of a special Act of the legislature of Pennsylvania approved March 20th 1849 (P. L. 194), entitled " An Act relative to the Cemetery of the United American Mechanics and Daughters of America, in the county of Philadelphia," enacting that : " No street, road, lane or alley shall hereafter be opened through the land of the United American Mechanics' and Daughters' Cemetery or burial place, except with the consent of said corporation, nor shall the same be liable to be taken or used for any object not connected with or appertaining to burial purposes, and shall be exempt from taxation for all purposes whatsoever."   This Act was formally accepted by the Cemetery Company April 9th 1849.

By an Act of Assembly passed June 8th 1881, P. L. 68,—declaratory of the meaning of the Act of May 23rd 1874, P. L. 235, and amendatory of the same—it was enacted : " The municipal authorities and courts having jurisdiction in any city of this commonwealth shall have exclusive control and direction of the opening, widening, narrowing, vacating and changing

grades of all streets, alleys, and highways within the limits of
such city, and may open or widen streets at such points and of
such width as may be deemed necessary by such city authorities
and courts, *any private or special contract to the contrary not-
withstanding*, proceedings to be had in such cases as are now
required by law."

Upon the affidavit of the president of said cemetery com-
pany, the court granted a rule on the petitioners in the original
proceeding to show cause why the appointment of the jury
should not be vacated.

Pending this rule the jury filed their report, in favor of
opening said street through the cemetery grounds, as prayed
for.

To this report the Cemetery Company filed exceptions, on
the grounds, inter alia, that the court of Quarter Sessions had
no jurisdiction of the proceeding, that the opening of said
street through the cemetery will impair the obligation of the
contract between the State of Pennsylvania and the corporation,
contained in said Act of 1849, contrary to the provisions of art.
I., sec. 10, of the Constitution of the United States ; and that
the above recited Act of June 8th 1881, was unconstitutional
and ineffectual to repeal said special Act of March 20th 1849,
on the faith of which special Act the corporation had expended
large sums, and over eleven thousand bodies had been buried
and now lie in said cemetery.

After argument, the court discharged the above-mentioned
rule to vacate the appointment of the jury, dismissed the said
exceptions, and confirmed the report of the jury ; THAYER,
P. J., filing the following opinion (after reciting the proceedings
and the Acts of 1849 and 1881 supra) :—

" Twenty-second street, as proposed to be opened by these
proceedings, will pass through the cemetery hitherto protected
by the Act of 1849.   The counsel for the cemetery company
have thereupon taken this rule to set aside the proceedings.   It
was admitted on the argument and seems to be incapable of de-
nial, that the effect of the Act of 1881 is to destroy the immun-
ity against being invaded and traversed by streets hitherto ex-
tended by law to this cemetery.   Indeed, the effects of the Act
may be far more extensive than this, for it is at least doubtful
whether it does not destroy the protection hitherto enjoyed by
nearly all the cemeteries within the city limits by virtue of the
several private Acts which have heretofore been a shield unto
them.  The Act of 1881 virtually repeals all Acts so far as they
stand in the way of opening streets.   Whether such legislation
is expedient or wise, it is not part of our province to determine.
Our only duty is to declare whether it is competent, lawful and
constitutional.

[In re Twenty-second Street.]

" It was insisted and very ably argued by the counsel for the cemetery company that the Act of 1849 and the acceptance of that Act constituted a contract between the state and the company, and that the abrogation of the Act is a breach of the contract, against which the company is protected by the Constitution of the United States, article 1, section 10.

" Conceding, for the sake of argument, that the Act of 1849, when accepted by the company, constituted a contract, it is nevertheless certain that contracts, like every other species of property, are subject to the right of eminent domain existing in the several States and must give way before it, and that the exercise of this power is not in conflict with article 1, section 10, of the Constitution : West River Bridge Company *v.* Dix, 6 Howard 507 ; Rundle *v.* Del. & Rar. Canal Co., 14 Howard 80 ; Fletcher *v.* Peck, 6 Cranch 87. It is incident to the sovereignty of every government that it may take private property for public use. Of the necessity and expediency of this taking the government must judge, and the only limitations to which this power is subject are that the taking must be for public use, and with the concomitant obligation to make just compensation for the property taken : Smedley *v.* Erwin, 1 Smith 445.

" Property and contracts of all kinds must yield to this demand of the sovereign, for all persons hold their property subject to requisitions for the public service. Franchises are held in subordination to this supreme power and must give way before its proper exercise. Implied conditions arising out of the paramount authority and necessities of the state enter into all such contracts. It is now well settled that there is no distinction between corporeal and incorporeal property in this respect, and a franchise may be taken or destroyed in the exercise of this right as well as any other property.

" A contract is property, but it is no more sacred than other property. Its obligation is not impaired, but it is recognized when compensation is provided for its infringement. These principles are well established, and are supported by clouds of cases in the several States. See Mills on Em. Dom. 42 ; Cooley on Const. Lim. 282. For the purpose of a Pennsylvania tribunal it is sufficient to refer to the recent case decided by the Supreme Court of this State, in re The Towanda Bridge Company, 10 Norris 216, where the point was directly decided that the right of eminent domain extends to corporate franchises as well as to other property.

" It is not for us to attempt the difficult task of reconciling these principles with the decisions of the Supreme Court of the United States, which in dealing with corporate rights have carried the principle of Dartmouth College *v.* Woodward, 4

[In re Twenty-second Street.]

Wheaton 418, to results far beyond those aimed at in that case, and which hold that a State may by an Act of its legislature place limits and restrictions upon itself in the exercise of attributes which are inherent in the frame of its government, and thus preclude itself from the use in particular cases of powers which are in their nature sovereign and inalienable, of which decisions the restraint upon the exercise of the taxing power in Wilmington Railroad v. Reid, 13 Wallace 264; Humphrey v. Pegues, 16 Wall. 244; and McGee v. Mathis, 4, Wall. 143, and the decision in the Binghampton Bridge Case, 3 Wallace 51, are examples. It is sufficient to say that none of these cases relate to the exercise of the powers of eminent domain in the opening of roads and streets, although they may be said to trench upon the foundations of that power, and if the principles asserted in these cases are to be pushed by logical deductions beyond the particular subjects to which they relate and the particular circumstances to which they were applied, it is not for us to do it.

"We are ready to follow, with all loyalty, the lead of these cases as far as they have gone, but it is no part of our duty to advance into the perilous region which lies beyond them. The conflict which has arisen between the Supreme Court of the several States and the Supreme Court of the United States upon these points, and the struggle which has taken place in the latter court itself, admonish us of the temerity of entering as combatants into such lists. ' *Non nostrum tantas componere lites.*'

"That the power of eminent domain may be delegated by a State to municipalities, corporations or individuals for the public benefit, is a point which has been so frequently decided as not to require any citation of authority in its support. Conceding, therefore, that the Act of 1849, being accepted by the cemetery company, became engrafted upon its charter, and constitutes a contract, there is nothing in that fact which withdraws it from the operation of the power of eminent domain. It is as liable to be taken in the exercise of that power as any other species of power, provided always that just compensation be made : Commonwealth v. Pennsylvania Canal Company, 16 P. F. S. 41.

"But is it not conceding too much, and more than the facts warrant, to say that the Act of 1849 constituted a contract between the State and the company? The Act was no part of the original charter, and so far as appears was without consideration. Now, that a consideration must appear for the grant of a 'privilege' which is 'to' be resolved into a contract with the State, is evident from all the cases. There must be a consideration, so that the State can be supposed to have received

a beneficial equivalent, otherwise the exemption is a mere privilege or license which may be revoked at any time : Christ Church Hospital *v.* Philadelphia County, 12 Har. 229, a decision which was affirmed by the Supreme Court of the United States ; Christ Church *v.* Philadelphia, 24 Howard 300.

"Other cases to the same effect may be found collected by Mr. Cooley, Const. Lim. 281. Now there is no evidence in this case anywhere that the State received any consideration or equivalent whatever for the exemption granted to the company by the Act of 1849, and without such consideration the exemption must be regarded as a mere privilege, the continuance of which depended upon the pleasure of the State, and which was liable to be withdrawn at its own volition at any time.

"The case of the Commonwealth *v.* Dickinson, 30 Legal Intelligencer 53 (which I do not find reported elsewhere), resembles the present case so strongly in all its leading features that it may be said to rule it. In that case a similar immunity against the opening of streets was extended to Monument Cemetery by an Act of Assembly, which was subsequently repealed by an act directing the opening of streets, and it was held that the immunity was gone. While the decision in that case was based upon the right of eminent domain, in the opinion delivered by Chief Justice READ, the question of the alleged unconstitutionality of the power exercised does not appear to have arisen or to have been discussed, and for that reason it has been considered here.

"In the Commonwealth *v.* Dickinson, the case below was decided upon the alleged insufficiency of the title of the repealing Act, which was an " Act to authorize the opening and paving of certain portions of Fifteenth, Sixteenth and Norris streets." Upon that point the judgment of the court below (reported 9 Phil. Rep. 561) was reversed, the Supreme Court holding the title to be a sufficient compliance with the constitutional provision requiring the subject of an Act to be clearly expressed in its title, and that the privilege enjoyed by this company had been destroyed by the subsequent Act.

"Upon the whole case, therefore, we are brought to the inevitable conclusion that the provision of the Act of 1849, which protected the property of this cemetery company against the opening of streets through its grounds, is, in common with all other private or special acts of the same character protecting cemeteries in cities, repealed by the Act of 1881, and that the immunity heretofore enjoyed in that respect has perished with the passage of the Act of 1881. The opening of Twenty-second street, therefore, under that Act, whatever may be said of it in other respects, is an exercise by the State

[In re Twenty-second Street.]

of its sovereign right of eminent domain, and is not obnoxious to any constitutional or legal objection.   Rule discharged."

The following decree was entered :—" April 1st 1882 : It is ordered and adjudged that the several exceptions filed in this case by the United American Mechanics and United Daughters of America Cemetery Association . . . be dismissed and the report be confirmed."

The said cemetery company, exceptants,. took this writ of certiorari assigning for error, inter alia, the above decree.

*E. P. Smithers*, for plaintiffs in error.—The street, if opened as authorized by the court below, will run through the receiving vault and chapel, and take away many graves wherein bodies are buried.  This, we contend, cannot be done without a violation of the contract between the corporation and the state, evidenced by the Act of March 20th 1849. in connection with the charter.  Such violation is prohibited by art. I. sec. 10, of the Constitution of the United States, providing that "no state shall . . . pass any . . . law impairing the obligation of contracts."  The Act of 1849 created an irrevocable contract, within the power of the state to make: Cooley on Const. Lim. 334; 3 Parsons on Contracts 549, note *d*; Dartmouth College *v.* Woodward, 4· Wheat. 518 ; Angell & Ames on Corp. § 81, 31; Sharpless *v.* Philadelphia, 9 Harris 147 ; Commonwealth *v.* Hartman, 5 Harris 118 ; Weister *v.* Hade, 2 P. F. S. 474; Lewis' & Nelson's Appeal, 17 P. F. S. 153 ; Philadelphia *v.* Field, 8 P. F. S. 320 ; Wilmington R. R. Co. *v.* Reid, 13 Wall. 266 ; Tomlinson *v.* Branch, 15 Wall. 460 ; Humphreys *v.* Peques, 16 Wall. 244 ; University *v.* People, 2 Otto. 309 ; Iron City Bank *v.* Pittsburgh, 1 Wr. 340 ; The Binghampton Bridge, 3 Wall. 51 ; Christ Church *v.* Philadelphia, 24 Howard 302 ; Benson *v.* New York, 10 Barb. 323.  The case of Commonwealth *v.* Dickinson, 30 Leg. Int. 53, is inapplicable, because it was "conceded no deceased human bodies had ever been buried in " the property there in question.

The general Act of 1881 is not effectual to repeal the special Act of 1849, because no such purpose or effect can be read in its title ; the title refers to the Act of May 23d 1874, the title of which makes no reference to the subject of opening streets in cities of the first class. . Opening streets through cemeteries has in our legislation been treated as a special subject : Act of April 5th 1849, P. L. 397, and many special Acts.

*J. Howard Gendell*, for the defendants in error.—This question has been decided in the Monument Cemetery Case, Commonwealth *v.* Dickinson, 30 Leg. Int. 53.  It is not every valid statute that is a valid contract.  The street in question was laid

out over this ground in 1839, under the Act of May 3d 1832, §§ 15 to 18, and upon confirmation of the plan the streets thereon were to be "forever thereafter deemed, adjudged and taken public highways." The special exempting Act, passed ten years later, did not profess to vacate the street. It did not bind the legislature not to exercise its right of eminent domain, which right was afterward, by the Act of 1881, vested in the municipality. A similar question was decided with respect to the opening of streets through Girard College grounds in favor of the power: 10 Philadelphia Reports, 145. A legislative contract permanently surrendering the right of eminent domain is ultra vires and void. The legislature is but a trustee for the public of its powers, and the doctrine of estoppel does not apply to an alienation of the rights of sovereignty : Stone *v.* Mississippi, 11 Otto 814; Presb. Church *v.* New York, 5 Cow. 538 ; Mott *v.* Penn. R. R. Co., 6 Cas. 9 ; Cooley's Const. Lim. *283 ; 2 Greenleaf's Cruise on Real Property 67, note ; Mills on Em. Domain, §§ 40, 42 ; In re Towanda Bridge Company, 10 Norris 216.

Mr. Justice PAXSON delivered the opinion of the court, January 22d 1883.

The assignments of error which involve the jurisdiction of the Court of Quarter Sessions to open streets laid out upon the confirmed plans of the city of Philadelphia, and also the regularity of the proceedings of the court below, were waived upon the argument and are not before us for decision. As the effect of a reversal upon these points would be to refer the opening of Twenty-second street to the city councils, the petitioners, who are the plaintiffs in error, prefer that we should pass upon the main question.

This involves the constitutionality of the Act of April 8th 1881 (P. L. 68), by which it was enacted that "The municipalities and courts having jurisdiction in any city of this commonwealth shall have exclusive control and direction of the opening, widening, narrowing, vacating and changing grades of all streets, alleys and highways within the limits of such city, and may open or widen streets at such points and of such width as may be deemed necessary by such city authorities and courts, any private or special statute to the contrary notwithstanding; proceedings to be had in such cases as are now required by law."

This was declaratory of section 13 of the Act of May 23d 1874 (P. L. 235), and amendatory of the same.

By a private Act passed March 20th 1849 (P. L. 194) it was enacted that "No street, road, lane or alley shall be hereafter opened through the land of the United American Mechanics

and Daughters of America Cemetery or burial place, except with the consent of said corporation, nor shall the same be liable to be taken or used for any object not connected with or appertaining to burial purposes, and shall be exempt from taxation," &c.

This act was formally accepted by the cemetery company, and it was urged that it thus became a contract with the State; that the aforesaid Act of 1881 was inoperative for the reason that it conflicts with section 10, article 1 of the Constitution of the United States, which prohibits any State passing a law impairing the obligation of a contract.

But the learned and able judge of the court below shows with great clearness that a contract, even if there be a contract in this case, is property, and is not more sacred than any other species of property : that " its obligation is not impaired but it is recognized when compensation is provided for its infringement." A franchise may be taken or destroyed in the exercise of the right of eminent domain by the commonwealth as well as any other property. In re Towanda Bridge Company, 10 Norris 216.

The careful consideration given to this question by the court below renders a further discussion of it unnecessary. The reasons given and the authorities cited in the opinion of the learned judge fully vindicate his judgment.

The proceedings are affirmed.