JOHN SACKS v. CITY OF MINNEAPOLIS and Others.

December 20, 1898.

Nos. 11,306—(146).

### City of Minneapolis—Condemnation of Cemetery—Liability for Tort.

The charter of the city of Minneapolis authorizes it to condemn land for street and highway purposes, but it also provides that such authority shall not be construed as permitting the condemnation of any ground of any cemetery or burial place occupied for such purpose without the consent of the owner of such ground. It did, without the knowledge or consent of the plaintiff, take and condemn for street purposes his burial lot in Maple Hill Cemetery, in said city, wherein were interred five of his children, remove their bodies therefrom and bury them in one grave in said cemetery. *Held*, that the condemnation proceedings were within the general scope of its corporate power, as prescribed by its charter, but that, as it did not obtain the consent of the owner of said lot for such purpose, its acts were unauthorized and tortious, and hence it is liable to plaintiff in damages therefor.

### Municipal Corporation—Action upon Unauthorized Contract—Action for Tort.

Distinction stated between actions arising on contracts made by a municipal corporation in excess of its corporate powers and actions against corporations for injuries caused by the tortious acts done by its officers and agents in the course of its business, and of their employment in excess of its powers.

Separate appeals by defendants City of Minneapolis and F. W. Cappelen, city engineer of Minneapolis, from an order of the district court for Hennepin county, Lancaster, J., overruling their demurrers to the complaint. Affirmed.

*Frank Healy* and *L. A. Dunn*, for appellants.

A municipal corporation is not liable for a tort committed by its agents or officers while in the performance of some act which is beyond the power of the corporation, even though the municipality may have ordered the act to be done; neither can the city ratify such act. McCarthy v. City, 135 Mass. 197; Cuyler v. Trustees, 12 Wend. 165; Brown v. City, 90 Mo. 377; State v. Kirkley, 29 Md. 85; Cooper v. Mayor, 53 Ga. 638; Seele v. Inhabitants, 79 Me. 343; Town v. Filteau, 10 Colo. 105; Kreger v. Bismarck Township, 59 Minn. 3; Board v. Deprez, 87 Ind. 509; Trustee v. Schroeder, 38 Iowa, 383; Tiedeman, Mun. Corp. § 338; 2 Dillon, Mun. Corp. § 968 (3d Ed.).

Upon the theory that Sp. Laws 1891, c. 129, is invalid, the acts of the city in the premises are wholly ultra vires and the condemnation proceedings are a nullity. Hence the respondent is still the absolute owner of the burial lot, because there has been no proper appropriation of the same to public use. Teick v. Board of Commrs., 11 Minn. 201 (292).

*Penney & McMillan,* for respondent.

The law recognizes and protects the right of burial. Larson v. Chase, 47 Minn. 307; Meagher v. Driscoll, 99 Mass. 281. See also Pierce v. Proprietors, 10 R. I. 227.

A municipality is liable for the tortious or unlawful exercise of its corporate power. Brink v. Borough, 174 Pa. 395; Welter v. City of St. Paul, 40 Minn. 460; Rich v. City of Minneapolis, 37 Minn. 423; Collensworth v. City, 16 Wash. 224; Donahew v. City, 136 Mo. 657; Norton v. City, 166 Mass. 48; Allison v. City, 51 Mo. App. 133; Dooley v. City, 82 Mo. 444. See also City v. Newell, 26 Ill. 320; Mayor v. Sheffield, 4 Wall. 189; Gould v. City, 60 Ga. 164; Walling v. Mayor, 5 La. An. 660; Buffalo v. City, 58 N. Y. 639; Ashley v. City, 35 Mich. 296; Weed v. Borough, 45 Conn. 170.

BUCK, J.

The plaintiff in his complaint alleged: That on November 21, 1866, he became the owner of the north half of lot No. 2 in block 83 in Maple Hill Cemetery, in the city of Minneapolis, which he purchased for his use as a cemetery lot, and that, prior to the acts

of the defendants herein complained of, he buried in said lot five of his children and a niece, all of whom remained buried in said lot until removed by the defendants, as herein stated.

On April 11, 1891, the legislature of the state of Minnesota passed a special law authorizing the defendant city of Minneapolis to vacate or cause to be vacated part of said Maple Hill Cemetery, and to remove or cause to be removed from the part so vacated all bodies interred therein, and to purchase or cause to be condemned, taken and appropriated for street purposes the part of said cemetery so taken. Sp. Laws 1891, c. 129, approved April 11, 1891. This law provided that the bodies of deceased persons removed should be properly buried within the remaining portions of said cemetery, in lots similar in size and character to those from which said bodies were removed, giving, however, the right to relatives of such deceased persons to remove the bodies of said deceased persons to some other cemetery, and the names of all deceased persons whose bodies were so removed from said portion of said cemetery, when known, and the place to which said bodies were removed should be entered on a record book, which book was to be filed in the office of the city clerk of the city of Minneapolis.

That the proceedings for the condemnation of any portion of said cemetery grounds under said law are the same as are provided by law for taking private property for like purposes, except as modified by the act. Pursuant to said law, the city of Minneapolis did appropriate and take for street purposes the portion of said Maple Hill Cemetery described in the law, which portion so taken included the premises hereinbefore described, which belonged to plaintiff, and in which said children were interred.

That at a regular and duly-called meeting of the city council of the city of Minneapolis, on June 29, 1894, a member of said city council moved that the city engineer of the city of Minneapolis be, and is hereby, directed to remove in such manner, and to such points as he may deem best, from the portions of Maple Hill Cemetery taken or required by the city for street purposes, all bodies interred therein, the expenses of such removal to be paid out of the permanent improvement fund, which motion was duly carried.

That thereafter, to wit, on November 19, A. D. 1894, said de-

fendants, and each of them, entered upon the said burial lot, and removed therefrom the bodies of each of the said children so interred therein, but that they carelessly and negligently failed properly to bury said bodies within the remaining portions of said cemetery, in a lot similar in size or character to the said burial lot; that, upon the said removal of said bodies, said defendants, and each of them, improperly, negligently and carelessly buried the said bodies in one grave, in some place to plaintiff unknown, within the city cemetery, in the said city of Minneapolis. This plaintiff had no notice, knowledge or information of the said taking of his said lot, and never received any compensation therefor, and had no knowledge or information of the removal of said bodies until long after such removal. That, by reason of the facts hereinbefore stated, plaintiff's feelings were greatly wounded, and he has suffered great grief and mental pain and anguish, to his damage, as he alleges, in the sum of $2,000.

The foregoing statement is substantially what constitutes the first cause of plaintiff's action, as alleged in his complaint, to which the city of Minneapolis and defendant F. W. Cappelen demurred separately, upon the ground that sufficient facts were not stated to constitute a cause of action.

The second cause of action is alleged to be as follows:

"Plaintiff repeats and realleges all of the allegations contained in his first cause of action herein, and makes the same part hereof.

"(2) That thereafter, and under and pursuant to said law, said defendant city of Minneapolis undertook to condemn the lands described therein, and including the said premises of plaintiff; that said condemnation proceedings were, on their face, due and regular in manner and form; that thereafter, to wit: on the 1st day of November, 1894, said defendants, pursuant to said law and condemnation proceedings, and without the knowledge or consent of plaintiff, entered upon and took possession of said described premises, and all thereof, and opened and constructed, and have ever since maintained thereon, a public street, and kept the exclusive possession thereof.

"(3) That, by reason of the facts hereinbefore alleged, said premises were of special value to this plaintiff, and were of the value of $2,000."

"(6) That, by reason of the premises, this plaintiff has been damaged in the sum of $2,000."

75 M.—3

Each of the above defendants interposed separate demurrers to the second cause of action, viz., that neither cause stated sufficient facts to constitute a cause of action. All of the demurrers were overruled by the court, and the defendants appeal.

An examination of the second alleged cause of action first seems the most appropriate and desirable. In doing this, we assume that the special law of 1891 (chapter 129) is unconstitutional, as the legislature was then prohibited from enacting special laws for the purpose of laying out, opening or altering highways. Const. art. 4, § 33. The acts complained of were done subsequent to the passage of the special law of 1891 above referred to; and, though done by virtue of its apparent authority, yet, as that law was unconstitutional, the acts of the defendant were unlawful, in view of Sp. Laws 1881, c. 76, subc. 8, § 10 (p. 462), which provides that

"Nothing in this section shall be construed as permitting the condemnation of any ground of any cemetery or burial place and occupied for such purposes, without the consent of the owners of such ground."

The defendant city would have the power to make such condemnation with the consent of the owner of such ground, and hence the right of condemnation is within the general scope of its corporate power as prescribed by its charter. To be ultra vires in the sense that it is not within the power or authority of the corporation, it must not have power to act in reference to the matter under any circumstances. Boye v. City of Albert Lea, 74 Minn. 230; 2 Dillon, Mun. Corp. (2d Ed.) § 968.

The only circumstance in this case which prevented the city from having power to lay out a street was the want of consent of the owner of the property; but this could not destroy the general corporate power of the city over the subject-matter. It had such general power, and the only thing to stay its exercise was want of consent of the owner of the property. His consent had nothing to do in creating the power, but only extended its exercise to his particular property. Having this general power, it proceeded to exercise it in an unauthorized and unlawful manner, for which we think that both demurring defendants are liable; not, of course,

for the value of the land attempted to be taken for damages, but for the trespass. Crossett v. City, 28 Wis. 420.

By their demurrer, they admit that the city undertook to condemn said land, claiming that they had apparent authority therefor, that their proceedings were regular on their face, that the city entered upon and took possession of said premises, and all thereof, and opened and constructed, and have ever since maintained thereon, a public street, and kept the exclusive possession thereof.

The admitted facts do not constitute it merely a trespasser by and through some of its officers, where the acts were wholly and manifestly outside of its charter and the scope of its provisions and corporate power, and where there was no adoption or ratifying act, and no retaining the benefits thereof with intent so to do perpetually. The corporation itself, vested with jurisdiction to act, admits that it has taken the property, and is using it for its public purposes, and affirms all the tortious acts in this respect of its officials; and it cannot now be allowed to shirk the responsibility for its tortious and injurious acts which it has perpetrated upon the property of others within its own limits, and say that the owner is without the means of redress.

It is well, however, to bear in mind that there is a distinction between actions arising on contract made by municipal corporations in excess of their powers, which are strictly speaking ultra vires, and actions against a corporation for injuries caused by tortious acts done by its agents in the course of its business, and of their employment in its powers.

This distinction is pointed out in Salt Lake City v. Hollister, 118 U. S. 256, 6 Sup. Ct. 1055, where, at page 263, it is said:

"It remains to be observed that the question of the liability of corporations on contracts which the law does not authorize them to make, and which are wholly beyond the scope of their powers, is governed by a different principle. Here the party dealing with the corporation is under no obligation to enter into the contract. No force or restraint or fraud is practiced on him. The powers of these corporations are matters of public law, open to his examination; and he may and must judge for himself as to the power of the corporation to bind itself by the proposed agreement. It

is to this class of cases that most of the authorities cited by appellants belong,—cases where corporations have been sued on contracts which they have successfully resisted, because they were ultra vires. But even in this class of cases the courts have gone a long way to enable parties who had parted with property or money on the faith of such contracts to obtain justice by recovery of the property or the money specifically, or as money had and received to plaintiff's use. Thomas v. Railroad Co., 101 U. S. 71; Louisiana v. Wood, 102 U. S. 294; Chapman v. County of Douglas, 107 U. S. 348, 355."

It was also further said, at page 260, by the same court:

"The truth is that, with the great increase in corporations in very recent times, and in their extension to nearly all the business transactions of life, it has been found necessary to hold them responsible for acts not strictly within their corporate powers, but done in their corporate name, and by corporation officers who were competent to exercise all the corporate powers. When such acts are not founded on contract, but are arbitrary exercises of power in the nature of torts, or are quasi criminal, the corporation may be held to a pecuniary responsibility for them to the party injured."

Dillon, in his work on Municipal Corporations (volume 2, § 971), after discussing the doctrine as laid down in several cases, says:

"Cases such as those just mentioned are to be distinguished from others which resemble them in the circumstance of relating to wrongful acts, but which arise out of matters or transactions within the general powers of the corporation, and in respect of which there may be a corporate liability. Thus, if, in exercising its power to open or improve streets, or to make drains and sewers, the agents or officers of a municipal corporation, under its authority or direction, commit a trespass upon, or take possession of, private property, without complying with the charter or statute, the corporation is liable in damages therefor."

It is to be observed in this case that the plaintiff entered into no contract with the city, and never knew of, and never in any manner consented to, its tortious acts, when his children were taken from his burial lot, and all buried by the city in one grave, and in a place to the plaintiff unknown. In view of the facts in this case and the law, the liability of the city is undoubted, as well as that of the defendant Cappelen, who assisted and took part with and in behalf of the city in these tortious acts.

The plaintiff has deemed it proper to divide the allegations in his complaint, and in form alleged two causes of action; but the transactions complained of were authorized to be, and were, done at the same time, in pursuance of one corporate purpose, and as one transaction, under the same apparent authority, and for the benefit of the city, and by it so intended. We are therefore of the opinion that, whether we regard the complaint as containing one or two causes of action, the rule of law herein stated is applicable, and hence each demurrer was properly overruled.

Order affirmed.

CANTY, J. (dissenting).

I cannot concur in the foregoing opinion. The city had authority to condemn land in this cemetery with the consent of the owner; that is, the city had a right to buy this land of the owner, and submit the question of price to arbitration.

If A. has authority to buy a horse, does that give him authority to steal one or take one by force? If the city had authority to buy land in a cemetery, did this give it authority, or even color of authority, to take it by force, and without the consent of the owner? Most certainly not. True, in Boye v. City of Albert Lea, 74 Minn. 230, 76 N. W. 1131, we held that a municipal corporation is liable for the tortious act of its officers, unless the act is, as said at page 233,

"Ultra vires, in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances."

"Any circumstances," as here used, means circumstances which it is in the power of the municipality of its own volition to create or control, not circumstances which are wholly within the control of the opposite or injured party, and wholly without the control of the municipality. In other words, the meaning is that if it is in the power of the municipality, by complying with its statutory powers, to do the act complained of, it is liable for the wrongful act of its officers in doing the same thing, without complying with such statutory powers.

In my opinion, the acts here in question of the officers of the

city were wholly without the scope of its powers. The majority seem to confuse the doctrine of when a private corporation is liable for the ultra vires acts of its officers, or may ratify those acts, with the doctrine of when a municipal corporation is liable for the ultra vires acts of its officers, or may ratify those acts.

Again, plaintiff, by the second cause of action, proposes to recover from the city, not damages for the trespass committed on the land, but the value of that land. If the majority intend to permit a recovery on this theory, they have, indeed, adopted a brand-new principle of law, as applied to real estate. They, in effect, allow the injured party to waive the tort, and sue on contract for the value of the real estate trespassed upon.