# ST. JAMES AFRICAN METHODIST EPISCOPAL CHURCH *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Eminent Domain—Right of Railroad Company to Condemn Unoccupied Part of Private Cemetery—Restriction in Charter of Railroad as to Width of Roadbed— Right to Take Additional Land.*

A railroad company with general powers of eminent domain has the right to condemn for its use the unoccupied part of a private cemetery owned by a religious corporation.

The provisions of Code, Art. 23, sec. 133, relating to the opening of streets and roads through the property of any cemetery company incorporated under said Article, do not apply to a tract of land owned by a religious corporation, part of which is used as a private cemetery.

The charter of the Baltimore and Ohio Railroad Company authorized it to construct a railroad not exceeding 66 feet wide. *Held,* that this restriction is as to the width of the road, and not as to the width of the land that it may be found necessary to take for the purpose of relocating the tracks.

The question whether a railway company has the right under its charter to condemn certain land for an addition to its roadbed is a matter exclusively within the jurisdiction of the Court to which the inquisition is returned, and no appeal lies from its action in the premises.

*Decided January 10th, 1911.*

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, THOMAS, PATTISON and URNER, JJ.

*P. Leslie Hopper* and *James J. Archer,* for the appellant.

*Stevenson A. Williams* and *Fred. R. Williams,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Harford County passed on the 18th day of February, 1910, overruling objections to an inquisition, confirming and ratifying the inquisition of the jury in the condemnation proceedings, and directing a judgment in favor of the appellants against the appellee for the sum of three thousand dollars.

There was no objection or exception in the Court below to the award of damages, but the objections rest upon the validity of the power and authority of the appellee to condemn the property sought to be taken.   These objections are:

First—Because the property is a public cemetery, and the appellee has no power to condemn it, under section 133, Art. 23 of the Code of Public General Laws, which provides that no lanes, alleys, streets, *roads,* canals or *public thoroughfares* of *any sort* shall be opened through the property of any cemetery company incorporated under the provisions of this Article which is used or appropriated for the purpose of burial * * *

Secondly—Because the taking of one and twenty-nine one hundredths of an acre, which is about two-thirds of the cemetery, will destroy the entire cemetery.

Thirdly—Because the appellee has no power under its charter to condemn more than 66 feet wide, and the land sought to be condemned in these proceedings is for a right of way which exceeds in width sixty-six feet; and

Fourth—Because it was a public cemetery in actual use by the public for the burial of the dead at the time of the institution of these proceedings.

It is well settled and conceded by the appellant in this case that the action of the Circuit Court in condemnation cases is exclusive and final, and unless the Circuit Court exceeded its jurisdiction an appeal will not lie to this Court, because the proceeding is a special and limited statutory one, from which the law provides no appeal. *Hopkins* v. *P., W. & B. R. R. Co.,* 94 Md. 265.

As was said in the *Hopkins case, supra,* the only ground upon which the present appeal can be maintained is that the appellee had no right at all to make the condemnation complained of, and for that reason the Circuit Court exceeded its jurisdiction in confirming the inquisition. If such be the case, the decisions support the right of appeal. *George's Creek Coal and Iron Co.* v. *Central Coal Co.,* 40 Md. 425; *B. & O. R. R. Co.* v. *Waltemyer,* 47 Md. 331; *Herzberg* v. *Adams,* 39 Md. 312.

In the present case, the facts upon which the objections are based and upon which the questions of *ultra vires* arise, briefly stated, are these: The appellant is a religious corporation formed for the purpose of religious worship, according to the rules, regulations and discipline of the African Methodist Episcopal Church, and incorporated under the general incorporation laws of the State.

On the 4th of February, 1895, the appellant acquired title to what is called "Square No. 28 of Reed's Addition to Havre de Grace," containing on or about two acres of land. This square was used as a church cemetery—that is, one-half of the square was laid off into lots about 20 by 24 feet, with walks about four feet wide between the lots. Twenty-eight of these lots were sold by the trustees of the church, and there are about 150 or 160 persons buried in these lots. According to the testimony, any person can be buried there who

complies with the regulations prescribed by the trustees. and the lots are sold to any person who desires to buy, provided he complies with the rules and regulations of the trustees.

The entire part of the square proposed to be taken by the appellee and condemned by the proceedings was unoccupied, except one lot, which contained two graves, and the appellee and the owner of this lot agreed upon a price to be paid for it. And it appears there were no other graves in any part of the two-thirds of Square No. 28, proposed to be taken by the appellee, but it was an unoccupied part of the cemetery.

The appellee is a public service corporation, and by virtue of its charter, Chapter 123 of the Acts of 1826, and the supplements thereto, operates its Philadelphia Branch Railroad from Camden Station, Baltimore City, through Baltimore, Harford and Cecil Counties, and other places.

It became necessary, as stated by the appellee in its brief, in order to standardize its tracks for safe approach to its new bridge over the Susquehanna river at Havre de Grace, Harford County, on its Philadelphia branch, to relocate its centre line in Harford County, between its station at Havre de Grace and the west end of its bridge, which is ninety feet above the river.

There were four cemeteries between those points, either contiguous to its present right of way or closely adjacent thereto, and according to the evidence and the surveys it was found almost impossible to relocate the line effectively, without running an impossible line, or interfering with one or the other or two of the cemeteries. The appellee, after a thorough examination into the possible locations, adopted what is called the compromise line and decided upon the relocation of the line, to be laid through the unoccupied portion of the church cemetery here in question—that is, taking about two-thirds of Square No. 28 of Reed's Addition to Havre de Grace. The trustees and the appellee having failed to agree upon the purchase price, the unoccupied part of

Square No. 28, containing 1 29/100 acres was condemned and the damages assessed at three thousand dollars.

The question, then, we have to decide is whether or not, upon these facts the appellee possessed the power to condemn the property here in question.

The objection that the appellee has no power to condemn a public·cemetery is not presented on this record, because it is clear that the appellant is not within the terms of section 133, Article 23, since it is not "a cemetery company incorporated under the provisions of the Code." Nor is it a cemetery company incorporated under Article 23, sec. 20, class 5 of the Code of Public General Laws, "for forming, laying out and maintaining cemeteries in this State." The proof shows that it was a private cemetery, belonging and attached to the church of the appellant, and not a public cemetery within the terms of Article 23 of the Code.

Now, whether the language of the appellee's charter, Act of 1826, Chap. 123, secs. 14, 15 and 17, wherein the power to condemn is given, is broad enough to include a public cemetery, incorporated under Art. 23 of the Code, and if so, whether this power is repealed or qualified by the terms of Article 23, sec. 133, which provides that no lanes, roads * * * or public thoroughfares of any sort, shall be opened through the property of any cemetery company incorporated, etc., it is not necessary to inquire, because we all agree that; under the facts of this case, the appellee had a valid power to condemn the unoccupied part of the cemetery here in controversy.

By section 15 of Chapter 123, of the Acts of 1826, the appellee had power to condemn any land * * * or any improvements which may be wanted for the construction or repair of any of the roads or any of their works for the purchase or use and occupation of the same. And by section 17 it is further provided, any *lands, materials* or other property in order to the construction or repair of any part

of the road or roads or their works or necessary buildings * * *

In the recent case of *Baltimore & Ohio R. R. Co.* v. *Waters,* 105 Md. 397, this Court said that the Act of 1826, Chap. 123 (the charter of the appellee), was an irrepealable contract, and beyond the power of withdrawal by repeal.

In 15 *Cyc.* 610, note 61, it is said, where a railroad company has no other feasible route it may condemn a right of way through part of a cemetery which consists of a steep, rocky slope, fronting on a river, and which was never used for cemetery purposes and was unfit for such, it appearing that the graves in the rest of the cemetery would never be disturbed by such appropriation.

In *Davis* v. *Cem. Co.,* 65 Kan. 563, it is said, no reason can be suggested why a private cemetery corporation operated for profit should receive any more grace at the hands of the Legislature than a private corporation organized for any other purpose.

In *Turnpike Road* v. *Railroad Co.,* 81 Md. 256, this Court said: "It is now settled by authority which this Court is bound to obey, that the grant of a franchise is of no higher order, and confers no more sacred title than a grant of land to an individual, and when public necessities require it, the one, as well as the other, may be taken for public purposes, on making suitable compensation; nor does such an exercise of the right of eminent domain interfere with the inviolability of contracts. *Bridge Co.* v. *Dix,.* 6 Howard, 507; *Railroad Co.* v. *Railroad Co.,* 13 Howard, 83."

It has also been said on this subject that a grant made for one public purpose must yield to another more urgent and important, and that the power to take private property for public use "reaches back of all constitutional provision." *Pumpelly* v. *Green Bay Co.,* 13 Wallace, 178.

In addition to the cases cited, we refer to the following, in support of our views, upon the proposition that the unoccu-

pied part of a private cemetery may be condemned for railroad or other public purpose: *In re 22nd Street*, 102 Pa. 108; 133 N. Y. 329; 104 Mich. 595; *Sachs v. Minneapolis*, 75 Minn. 30; *Wood v. Macon*, 68 Ga. 539; *N. Y. C. & H. R. v. M. G. L. Co.*, 63 N. Y. 334; *Sp. C. G. Co. v. P. S. R. R.*, 167 Pa. 6; *Cem. Co. v. Cem. Asso.*, 93 Texas, 569; *Com. Assoc. v. Beecher*, 53 Conn. 557; *Board v. Van Hoesen*, 87 Mich. 540; *Balch v. Co. Commrs.*, 103 Mass. 115.

*In the Matter of Board of Street Opening*, 133 N. Y. 333, it is said: "But this was not a public cemetery, St. John's Cemetery, Trinity Church, N. Y., and so far as appears had never been devoted to a public use. The public generally never had any right of burial therein. No burials therein could be made except by permits given by Trinity Church, and all interments therein had been made by its authority. The cemetery land was therefore devoted to a private and not a public use."

In *Matter of Deansville C. Association*, 66 N. Y. 573, the Court said: "The point upon which the present case turns is the nature of the use for which the land in question is sought to be taken. It is to be vested in trustees with power to divide into lots and sell those lots to individual owners. It is difficult to see what interest the public will have in the lands or in their use. No right on the part of the public to buy lots or bury their dead there is secured. The prices at which the lots are to be sold are to be fixed by private agreement; the corporation is to be managed by trustees elected by the lot owners. The lots or the rights of the owners therein are to descend as private property to the heirs of their owners, and by the Act of 1874 (compare Code, Art. 23, sec. 134) the owners may, by leave of the Courts, sell their lots and put the proceeds in their pockets. The substantial right of enjoyment of the property is vested in the individual lot owners; and the whole effect of the incorporation of their cemetery associations is to enable a number of private indi-

viduals to unite in purchasing property for their own use and that of their descendants as a place of burial and to secure a permanent management of it through the instrumentality of trustees appointed by themselves and subject to no other control, with the privilege when they cease to use their lots as a place of burial to sell them and receive the proceeds for their own benefit. It is argued that the property is to be used as a place of burial, and that the burial of the dead is a public benefit, and therefore the use is public. But the answer to this argument is that the right of burial in these grounds is not vested in the public or in the public authorities, or subject to their control, but only in the individual lot owners. If the fact that it is a benefit to the public that the dead should be buried is sufficient to make a cemetery a public use, the Legislature might authorize A. to take the land of B. for a private burial place of A. and his family. The fact that this land is taken for the benefit of a number of individuals for division among themselves or their grantees for their own use as a cemetery makes the case no stronger than if taken for the benefit of a single individual."

The cases cited by the appellant in support of its views are clearly distinguishable from the case at bar. Some of the decisions rest upon the phraseology of the statutes of the States and in others the defendant was incorporated as a cemetery company.

As to the last ground relied upon by the appellant that more than sixty-six feet in width has been condemned, whilst the company, under its Charter, has no power to condemn more than sixty-six feet, we need only say that this question has been so recently and carefully considered by this Court, in the case of *Dolfield* v. *Western Md. R. Co.,* 107 Md. 584, that we deem it unnecessary to discuss it further. It was held in that case, that the company had the right under its charter and the general laws to condemn the additional land. The restriction is on the width of the road and not on the

width of the land occupied. The right to build a road sixty-six feet wide includes the right to acquire sufficient land to enable the company to do the thing it was authorized to do, so the taking of more than sixty-six feet, under the circumstances of this case, was not an *ultra vires* act. It was also said in *Dolfield's case,* that the question whether a railway company has the right under its charter to condemn additional land is a matter exclusively within the jurisdiction of the Court, to which the inquisition is returned and which is authorized to confirm or reject the same. *Webster* v. *Pole Line Co.,* 112 Md. 416; *C. & P. R. R. Co.* v. *B. & O. R. R. Co.,* 57 Md. 267.

We are, therefore, of the opinion, for the reasons given that the appellee company had the power to make the condemnation in this case, and that the Court below had exclusive jurisdiction over the proceeding and no appeal lies to this Court from its decision. *Moores* v. *Bel Air,* 79 Md. 397; *N. Y. Mining Co.* v. *Midland Co.,* 99 Md. 506; *Webster* v. *Pole Line Co.,* 112 Md. 417.

The appeal will be dismissed and the writ of error quashed.

*Appeal dismissed and writ of error quashed, with costs.*